Jeffrey D. Cawdrey (SBN: 120488)
Megan M. Adeyemo (CO BN: 36271)(admitted *Pro Hac Vice)*
GORDON & REES LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Debtor
S.T. Moll, Inc. d/b/a Integrity Tire Auto Service Center

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>S.T. MOLL, INC.,<br>D/B/A INTEGRITY TIRE AUTO SERVICE CENTER,<br><br>Debtor. | CASE NO. 6:14-BK-12175-MJ<br><br>Chapter 11<br><br>**REPLY TO OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Hearing Date**:<br>Date: April 29, 2015<br>Time: 1:30 p.m.<br>Courtroom: 301<br>Judge: Meredith A. Jury |

TO THE HONORABLE MEREDITH A. JURY, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND PARTIES IN INTEREST:

S.T. Moll, Inc. ("Debtor"), by and through its counsel, Gordon & Rees LLP, files its Reply to Objections to Debtor's Disclosure Statement for Plan of Reorganization (this "Reply"), and, in support thereof, states as follows:

**INTRODUCTION**

The objection to approval of Debtor's Disclosure Statement (as defined below) filed by PPE (as defined below) asserts, among other things, that Debtor's Plan violates the absolute priority rule, was filed in bad faith and additional information is required. The assertions regarding violation of the absolute priority rule and lack of good faith are without merit.

- 1 -
REPLY TO OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION

1  Debtor's principal is providing new value in accord with the new value exception to the absolute
2  priority rule by paying a significant portion of a priority tax claim against Debtor.  Furthermore,
3  the bad faith allegations are based entirely on an assertion that an unsecured claim should be
4  treated as a secured claim.  As set forth below and in the Disclosure Statement, Debtor has
5  properly treated PPE's claim as unsecured.  Debtor has provided additional information to
6  address the disclosure issues raised by PPE.
7      The UST (as defined below) has provided a brief objection requesting more information
8  regarding Mr. Moll's tax obligations.  Debtor has amended its Disclosure Statement to include
9  additional information as requested by the UST.

## BACKGROUND

11  Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the
12  United States Code (the "Bankruptcy Code") on February 23, 2014 (the "Petition Date").  Debtor
13  remains in possession of its property and in management of its business as a debtor in possession
14  pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, official committee
15  of unsecured creditors or other committees have been appointed herein.
16  Debtor is a California corporation that owns and operates three tire dealerships and auto-
17  repair centers in Southern California.  Steven W. Moll ("Mr. Moll") is president, chief executive
18  officer and secretary of Debtor as well as Debtor's sole shareholder.  Debtor is a small, family
19  owned and operated business.  Since the Petition Date, Debtor has at great effort significantly
20  restructured its operations.  Debtor has, among other things, reduced office staff, streamlined its
21  operations and reorganized its sales stuff.  Debtor's hard work has resulted in a sizeable increase
22  in Debtor's sales and profitability.
23  On March 20, 2015, Debtor filed its [Proposed] Disclosure Statement for Plan of
24  Reorganization Proposed by Debtor [Docket No. 208] (the "Disclosure Statement"), its Plan of
25  Reorganization Proposed by Debtor [Docket No. 209] (the "Plan"), and a Motion for Order:  (1)
26  Approving Disclosure Statement for Plan of Reorganization Proposed by Debtor; (2) Fixing
27  Various Deadlines Relating to Plan Confirmation; (3) Approving Form of Ballot, Solicitation
28  Letter and Notice; and (4) Authorizing Manner of Service [Docket No. 210] (the "Motion").

Gordon & Rees LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

On April 15, 2015, Premium Performance Enterprises, Inc. ("PPE") filed its Objection to Debtor's Disclosure Statement for Plan of Reorganization [Docket No. 232] (the "PPE Objection") and the Office of the United States Trustee (the "UST") filed its Objection to [Proposed] Disclosure Statement for Plan of Reorganization Proposed by Debtor [Docket No. 233] (the "UST Objection").

For the reasons set forth herein, the PPE Objection and the UST Objection (collectively, the "Objections") should be overruled and the Disclosure Statement, as amended, found to contain adequate information and the Motion granted.

## ARGUMENT

### A. <u>PPE's Objection Should be Overruled</u>

In its Objection, PPE asserts that PPE's claim is improperly classified as an unsecured claim and the Disclosure Statement should be amended to treat PPE as a secured creditor. Further, PPE asserts that the treatment of PPE's claim is indicia that Debtor proposed its Plan in bad faith. In addition, PPE argues that the Plan is unconfirmable on its face, allegedly "the Plan is not confirmable because it fails to satisfy the requirements under section 1129 of the Bankruptcy Code including the absolute priority rule."

PPE further asserts that Debtor's projections attached as Exhibit D to the Disclosure Statement (the "Projections") are inaccurate and understated. PPE finally argues that the Plan violates the absolute priority rule. Each of these arguments lack merit and are properly overruled by the Court.

### *i. PPE's Claim is Properly Classified as Unsecured*

PPE filed Claim No. 6 (the "Proof of Claim") in which PPE asserts a secured claim of $137,862.82. Of course, PPE filing a claim that it alleges is secured does not make PPE in fact secured. PPE is not a secured creditor with an interest in any property of the estate as any security interest it had against the Debtor is limited to collateral long ago transferred by the Debtor, with PPE's knowledge and consent.

Debtor purchased two store locations from PPE, one at 1061 E. Arrow Highway, Glendora, CA (the "Glendora Store") and 476 West Valley Blvd., Rialto, CA (the "Rialto Store,"

Gordon & Rees LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

collectively with the Glendora Store, the "PPE Stores"). As part of the transaction, Debtor granted PPE a security interest in the inventory, furnishings, fixtures, accounts receivable, vehicles and equipment located at the PPE Stores. A true and correct copy of the Security Agreement by and between Debtor and PPE is attached to the Declaration of Steven W. Moll in Support of Debtor's Response to Objections to Debtor's Disclosure Statement for Plan of Reorganization (the "Moll Declaration") as Exhibit A. The same documents are attached to PPE's Proof of Claim and to PPE's Objection.

Debtor sold the Glendora Store several years ago. Not only was PPE aware of the sale, PPE released its security interest in collateral located at the Glendora Store. Debtor sold the Rialto Store in 2009, again with PPE's consent. Debtor did not retain possession of any of PPE's collateral from either the Glendora Store or the Rialto Store. PPE is well aware of each of these transactions and, in fact, is receiving rent from the new owner of the Rialto Store, Quality Tire.

Debtor will file an objection to PPE's Proof of Claim to properly reflect PPE's claim as unsecured.. However, PPE's assertion of a secured claim should not delay or, worse yet, bar approval of Debtor's Disclosure Statement, particularly where PPE has full knowledge of the true status of its claim as unsecured.

Moreover, and despite PPE's lack of candor regarding its claim, Debtor's proposal of a Plan that treats PPE's Proof of Claim as unsecured, given that PPE's claim is in fact unsecured, could not have been filed in bad faith. Pursuant to § 1129(a)(3) of the Bankruptcy Code, a plan must be proposed in "good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1046 (9th Cir. Cal. 2013) *citing Sylmar Plaza, L.P. v. Sylmar Plaza L.P.* (*In re Sylmar Plaza, L.P.*), 314 F.3d 1070, 1074 (9th Cir. 2002).

PPE's only alleged basis for bad faith is that PPE's claim is treated as an unsecured claim. As set forth above, PPE's claim is an unsecured claim. The Plan achieves a result consistent with the objective and purposes of the Bankruptcy Code. The Plan provides for the payment of claims against the estate in accordance with the § 507 of the Bankruptcy Code and

**Gordon & Rees LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

allows Debtor to come out of bankruptcy with its operations intact. Thus, Debtor's Plan was proposed in good faith and not by any means forbidden by law.

### ii. *The Plan does not Violate the Absolute Priority Rule*

The PPE Objection asserts that the Plan violates the absolute priority rule because Debtor seeks to allow Mr. Moll to retain his equity interest in Debtor while proposing to pay unsecured creditors less than the full value of their claims. The Ninth Circuit recognizes the "new value" exception or corollary to the absolute priority rule. *In re Bonner Mall Partnership,* 2 F.3d 899, 907-08 (9th Cir. 1993). The new value exception allows the equity owners of a debtor in bankruptcy to retain an interest in the reorganized debtor in exchange for new capital contributions over the objections of a class of creditors that have not received full payment on its claims. *Oxford Life Ins. Co. v. Tucson Self-Storage,* 166 B.R. 892, 899 (B.A.P. 9th Cir. Ariz. 1994)(citing *In re Bonner Mall Partnership,* 2 F.3d at 915); *see also, Pineda Grantor Trust II v. Dunlap Oil Co.,* 2014 Bankr. LEXIS 4931 (B.A.P. 9th Cir. Dec. 5, 2014).

In evaluating whether a plan satisfies the requirements of the new value exception, a court is determining whether old equity holders are unjustifiably attempting to retain their ownership powers in violation of the absolute priority rule or whether there is a genuine and fair exchange of new capital for an equity interest. The "new value" exception requires the payment of value that is "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, and (5) reasonably equivalent to the value or interest received." *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp.*, 115 F.3d 650 (9th Cir. Ariz. 1997); *In re Bonner Mall Partnership,* 2 F.3d at 908-09. The value must be "tangible, alienable, enforceable, and something of value to the creditors at the time the plan is confirmed." *Oxford Life Ins. Co. v. Tucson Self-Storage,* 166 B.R. at 899 *citing Northwest Bank Worthington v. Ahlers*, 485 U.S. 197, 204 (1988). The Ninth Circuit has stated that if a proposed plan satisfies all of the above requirements, it does not violate the absolute priority rule. *In re Bonner Mall,* 2 F.3d 899.

Debtor's Plan satisfies the new value exception and thus does not violate the absolute priority rule. As outlined in the Disclosure Statement and Plan, the IRS filed a proof of claim asserting a priority tax claim against Debtor's estate in the amount of $289,248.63 (the "IRS

Gordon & Rees LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Claim"). The IRS filed a claim in Mr. Moll's pending Chapter 13 case for a portion of the IRS Claim. Mr. Moll's confirmed Chapter 13 Plan provides for a payment of $125,753.08 ("Chapter 13 Payment"), which is the total amount claimed in Mr. Moll's case and a portion of the IRS Claim. The payment of a substantial portion of Debtor's IRS Claim meets the requisite criteria outlined above to satisfy the "new value" corollary to the absolute priority rule.

### a. The Chapter 13 Payment is "New" Value

PPE asserts that the payment of a portion of the payment of the IRS Claim by Mr. Moll is not new value because Mr. Moll is personally responsible for the payment of the IRS Claim. The IRS Claim is for unpaid FICA taxes. A true and correct copy of the IRS Claim is attached to the Moll Declaration as Exhibit B and incorporated herein by reference. The IRS' claim in Mr. Moll's Chapter 13 case characterizes the claim against Mr. Moll as a civil penalty.[1] The IRS has confirmed that the amount claimed in Mr. Moll's bankruptcy are the same taxes claimed in this bankruptcy case. Notably, the IRS has not filed an objection to the Disclosure Statement.

While a responsible person may also have personal liability for certain unpaid taxes, including FICA taxes, the IRS can only recover the taxes once. In short, the responsible person does not have liability if the taxes are paid by the corporate entity. Further, if a "penalty" has been assessed against a responsible person, collection activity is typically delayed when the corporate entity is implementing a plan for payment of the taxes. *See* IRS Manual Part 5, Chapter 9, Section 8.10. Pursuant to the IRS Manual Part 5, Chapter 9, Section 8.10, the assessment of the trust fund recovery penalty will normally be withheld during the pendency of the Chapter 11 or 12 bankruptcy proceedings, unless delaying assessment could jeopardize ultimate collection. Mr. Moll's personal liability exists only to the extent that the IRS Claim is not paid by Debtor. Thus, there was no obligation of Mr. Moll to pay any portion of the IRS Claim during the pendency of Debtor's case.

The Chapter 13 Payment is new value as it reduces priority claims against the estate,

---

[1] It should be noted that term "penalty" used in connection with a responsible person's liability is somewhat misleading. The amount of the liability imposed by 26 U.S.C. § 6672 is equal to the amount the delinquent trust fund taxes and is not in addition to those taxes. *In re Technical Knockout Graphics, Inc. v. Technical Knockout Graphics, Inc*, 833 F.2d 797, 799 (9th Cir 1987)(noting, "the funds collected under Section 6672(a) are termed a penalty does not alter their essential character as taxes").

- 6 -
REPLY TO OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION

Gordon & Rees LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1 which frees up additional cash flow for distribution to Debtor's unsecured creditors.

### b. The Chapter 13 Payment is "Substantial"

"The Ninth Circuit has declined to adopt a particular methodology for determining whether a contribution is substantial, holding instead that a '*de minimis* contribution' does not satisfy the new value exception." *Pineda Grantor Trust II v. Dunlap Oil Co*., 2014 Bankr. LEXIS 4931 (B.A.P. 9th Cir. Dec. 5, 2014)(citing *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp*., 115 F.3d at 655)). The Ninth Circuit noted that there may be several considerations that may be relevant in the analysis, including "comparing the amount of the contribution to total unsecured claims, comparing the contribution to the amount of claims being discharged, and considering the extent of the dividend being paid on unsecured claims by virtue of the contribution." *Id.*

In *Pineda Grantor Trust II*, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") determined that the 5.49% contribution to the total unsecured claims was not so *de minimis* as to fail the substantial contribution factor as a matter of law. *Pineda Grantor Trust II v. Dunlap Oil Co*., 2014 Bankr. LEXIS 4931 at *55-57(further citing *In re Woodbrook Assocs*., 19 F.3d 312, 320 (7th Cir. 1994)($100,000 contribution not substantial because it is only 3.8% of $2.6 million unsecured debt); *In re Snyder*, 967 F.2d 1126, 1132 (7th Cir. 1992)("the disparity between the contribution and the unsecured debt," at most $22,000 or 2.2% of approximately $1,000,000 unsecured claims, was "so extreme . . . there [was] no need to proceed any further . . . ."); and *Travelers Ins. Co. v. Olson*, 80 B.R. 935 (Bankr. C.D. Ill. 1987)($5,000, or only 1.56% on the $320,000 due all unsecured creditors, held insubstantial),1989 U.S. Dist. LEXIS 18177, 1989 WL 330439 (C.D. Ill. Feb.8, 1989), with *State St. Bank and Trust Co. v. Elmwood, Inc*., 182 B.R. 845, 853-54 (D. Nev. 1995)(affirming bankruptcy court's decision that $150,000 contribution which was less than 4% of unsecured debt was substantial in light of other factors)). In determining its finding, the Ninth Circuit BAP noted that the proposed 5.49% ratio was greater than case law cited above and thus, satisfied the substantial prong of the new value exception. *Id.*

Here, in this case, the $125,753.08 new value payment far exceeds the 5.49% ratio in

- 7 -
REPLY TO OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION

*Pineda*. The total amount of Debtor's unsecured claims is $426,760.08. Thus, the new value contribution is approximately 29.47% of the total amount of unsecured creditor claims in this case. Therefore, the Chapter 13 Payment sufficiently satisfies the substantial prong requirement of the new value corollary.

### c. The Chapter 13 Payment is "Money or Money's Worth"

Under the "money or money's worth" requirement, the new capital contribution of the former equity holders (1) must consist of money or property which is freely traded in the economy, and (2) must be a present contribution taking place on the effective date of the plan rather than a further contribution. *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp.*, 115 F.3d at 655.

Here, the Chapter 13 Payment is money or property which is freely traded in the economy as it is a cash paid monthly by Mr. Moll from his own funds. The Chapter 13 Payment is a present contribution taking place on or before the effective date of the plan. Mr. Moll's Chapter 13 Plan is a confirmed plan, which now obligates Mr. Moll to pay the Chapter 13 Payment for the benefit of Debtor. Mr. Moll has been making the payments required by his chapter 13 plan.

Therefore, based on the foregoing, the money or money's worth prong of the new value corollary is satisfied by the Chapter 13 Payment.

### d. The Chapter 13 Payment is Necessary For a Successful Reorganization

The Chapter 13 Payment is necessary for a successful reorganization because without this new value contribution, Debtor's unsecured creditors would receive far less than the amount proposed in Debtor's Plan. Moreover, the Bankruptcy Code requires payment of all tax claims in full within five years of the Petition Date. Thus, the Chapter 13 Payment by Mr. Moll is necessary for a successful reorganization.

### e. The Chapter 13 Payment is Reasonably Equivalent to the Value or Interest Received by Mr. Moll

The Chapter 13 Payment is reasonably equivalent to value or interest received by Mr.

**Gordon & Rees LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**

Moll retaining his equity in Debtor. Based on Debtor's liquidation analysis, the value of the equity interest in Debtor is less than the Chapter 13 Payment. The liquidation analysis shows that Debtor's assets have a liquidation value of $407,766.28. Debtor's assets are encumbered by a secured claim of approximately $154,000. In addition, there are administrative and priority tax claims in excess of $200,000 and unsecured claims of approximately $426,000. Thus, the ownership interests in Debtor have no liquidation value. Moreover, since its formation, Debtor has not been able to make any profit distributions to equity. While Debtor has significantly restructured its operations, Debtor does not anticipate having available funds to make any profit distributions to equity. In addition to plan payments for the next five years, Debtor's stores are in desperate need of capital improvements. Therefore, the Chapter 13 Payment is at minimum reasonably equivalent to the value of Mr. Moll's equity interest and realistically far exceeds reasonably equivalent value.

For these reasons, the Plan satisfies the new value exception to the absolute priority rule and is confirmable.

### iii. *Debtor's Projections are Based on Debtor's Past Performance and Provide Adequate Information*

PPE further asserts that the Disclosure Statement should not be approved for essentially two reasons. First, the Projections are not accompanied by assumptions. Second, Debtor's last monthly MOR indicated gross income of over $500,000 while Debtor projects income to gradually increase at a two percent annual rate over the projection period from $400,000 to $441,000. Neither of these reasons are cause to deny approval of Debtor's Disclosure Statement.

Debtor has amended its Projections, which are attached to the Moll Declaration as Exhibit D and filed separately with an amended disclosure statement. The amended Projections contain additional information regarding assumptions. In addition, Debtor has filed an amended disclosure statement (the "Amended Disclosure Statement") to include additional information regarding Debtor's prepetition and postpetition financial performance. A copy of the Amended Disclosure Statement showing all revisions made by Debtor is attached to the Moll Declaration

as Exhibit E.

Moreover, Debtor's Projections are based on Debtor's financial performance since the Petition Date. During the 12 month period ending March 31, 2015, Debtor's monthly operating reports reported total receipts of $4,176,545.04. During this period, monthly gross sales have ranged from $302,919.90 in September 2014 to just over $500,000.00 in March 2015 for a monthly average (based on the trailing 12 months) of $348,045.42. Based on current sales trends, Debtor's management projected that the trailing 12 month moving average monthly sales figure will approximate $400,000.00 by the estimated date of the Debtor's confirmation hearing.

Based on the foregoing, the Court should overrule PPE's Objection and approve the Amended Disclosure Statement.

### B. The UST Objection Should be Overruled

The UST Objection asserts that the Disclosure Statement should include additional information, primarily information relative to Debtor's tax obligations and the Chapter 13 Payment. Debtor has revised its Disclosure Statement to include additional information per the UST Objection. Specifically, Debtor included a description of the IRS Claim and the Chapter 13 Payment as well as Debtor's other tax obligations. These revisions are shown on the redline attached to the Moll Declaration as Exhibit E. Thus, the Amended Disclosure Statement should be found to contain adequate information and be approved for distribution.

### CONCLUSION

Debtor's Amended Disclosure Statement contains adequate information as required by the Bankruptcy Code. In addition, the Plan is not patently unconfirmable. Mr. Moll's Chapter 13 Payment is new value and thus the Plan does not violate the absolute priority rule. Accordingly, Debtor respectfully requests the Court should approve the Amended Disclosure Statement and grant the Motion.

Dated: April 22, 2015                                          GORDON & REES LLP

By: */s/ Jeffrey D. Cawdrey*
Jeffrey D. Cawdrey
Megan M. Adeyemo
Attorneys for S.T. MOLL, INC.

- 10 -
REPLY TO OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION